Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000668
26-NOV-2014
09:24 AM

NO. CAAP-11-0000668

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


MARCELINO RAMENTO, Plaintiff-Appellee,
v.
M&M TANKS, INC., Defendant-Appellant/
Cross-Appellee

and

JOHN S. BRUNS, Plaintiff,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10,
DOE CORPORATIONS 1-10, DOE ENTITIES 1-10,
DOE LIMITED LIABILITY COMPANIES 1-10 and
DOE GOVERNMENTAL ENTITIES 1-10, Defendants.


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 09-1-1465)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Foley and Leonard, JJ.)

Plaintiff-Appellee Marcelino Ramento (Ramento) sued Defendant-Appellant M&M Tanks, Inc. (M&M Tanks) for age discrimination, retaliation for opposing age discrimination, and intentional infliction of emotional distress. Ramento's first trial ended in a mistrial.[1] After a retrial, the jury found M&M

---

[1] The jury in the first trial found in favor of M&M Tanks with respect to the claims asserted by Ramento's co-plaintiff, John S. Bruns.

Tanks liable on Ramento's claims and awarded general, special, and punitive damages.

On appeal, M&M Tanks contends that: (1) the Circuit Court of the First Circuit (Circuit Court)[2/] erred in redacting the first-trial testimony of Ramento's expert to exclude, pursuant to the collateral source rule, testimony related to Ramento's receipt of social security retirement benefits, and then admitting the redacted testimony during the retrial; (2) the Circuit Court erred in denying M&M Tanks' motion for judgment as a matter of law on Ramento's claim for punitive damages, which was made at the close of Ramento's case in chief; and (3) there was insufficient evidence to support the jury's finding of liability on Ramento's retaliation claim. As explained below, we conclude that M&M Tanks' appeal lacks merit.

BACKGROUND

I.

Ramento had a long work history as a plumber and laborer. In June 2002, he began working for M&M Tanks. While employed by M&M Tanks, Ramento worked on large construction projects doing work as a plumber and also providing physical labor.

In January 2005, M&M Tanks assigned Ramento to work on a federal roadway improvement project at the Opana Regional Relay Station (Opana Project). Ramento was 64 years old at that time. On January 31, 2005, the foreman for the Opana Project assigned Ramento to perform heavy labor work. At the end of the work day, the foreman told Ramento that Ramento would no longer be needed on the job and that he would be replaced by younger workers. On February 2, 2005, M&M Tanks gave Ramento a letter of separation, which explained that he was being separated from employment due to "Lack of Work." However, several younger workers were assigned to the Opana Project after Ramento was laid off.

---

[2/] The Honorable Virginia L. Crandall presided.

On February 7, 2005, John S. Bruns (Bruns), Ramento's co-plaintiff, submitted a memorandum to M&M Tanks alleging that it had used age discrimination against Bruns and Ramento to lay them off. On February 11, 2005, Mike Deegan (Deegan), the vice-president of M&M Tanks, met separately with Bruns and Ramento. During Ramento's meeting with Deegan, Ramento submitted a signed memorandum to Deegan in which Ramento asserted that "M&M Tanks, Inc. improperly used 'no work' and called it a 'separation' as a way to discharge me from working on the Opana job, using a younger person to replace me, resulting in age discrimination." Deegan explained to Ramento that "[t]here was no age discrimination" and that M&M Tanks would give him the opportunity to resume working if other job opportunities opened up.

When Ramento left the meeting, another M&M Tanks supervisor asked him to drive a truck for several days to deliver materials. Ramento worked for M&M Tanks in that assignment until February 18, 2005. After that brief assignment, M&M Tanks never gave Ramento any additional work. Ramento was unable to find other employment, which led him to apply for social security retirement benefits two years earlier than he had previously planned. Ramento filed a complaint with the Hawai'i Civil Rights Commission and the Equal Employment Opportunity Commission, and he was issued right to sue notices by both commissions. Ramento thereafter filed a complaint in Circuit Court.

II.

In the first trial, the Circuit Court[3] declared a mistrial as to Ramento's claims against M&M Tanks. On retrial,[4] the jury found in favor of Ramento on his claims of age discrimination, retaliation for opposing age discrimination, and intentional infliction of emotional distress. The jury awarded general, special, and punitive damages.

---

[3] The Honorable Eden Elizabeth Hifo presided over the first trial.

[4] The Honorable Virginia L. Crandall presided over the retrial.

The Circuit Court entered its "Final Judgment" on June 9, 2011. M&M Tanks filed a "Motion for Judgment or, in the Alternative, for a New Trial," which raised the same issues that M&M Tank raises in this appeal. On August 11, 2011, the Circuit Court issued its "Order Denying Defendant's Motion for Judgment or, in the Alternative, for a New Trial." This appeal followed.

DISCUSSION

I.

A.

At Ramento's first trial, Ramento called Thomas A. Loudat, Ph.D (Dr. Loudat), an expert in economics, to testify about the past and future income Ramento lost as the result of M&M Tanks' termination of his employment. On cross-examination by M&M Tanks, Dr. Loudat testified that he should have subtracted the social security retirement benefits Ramento had received in calculating Ramento's lost past income, and that the failure to do so was an "oversight" on his part. Dr. Loudat was not available to testify at the retrial and portions of his testimony from the first trial were read into the record during the retrial.

M&M Tanks contends that the Circuit Court erred in redacting Dr. Loudat's first-trial testimony to exclude, based on the collateral source rule, testimony related to Ramento's receipt of social security retirement benefits and its effect on Dr. Loudat's calculation of Ramento's damages for lost past income, and then admitting the redacted testimony during the retrial. M&M Tanks does not claim that the collateral source rule is inapplicable to Ramento's receipt of social security benefits, and it does not claim that Dr. Loudat should legally have taken Ramento's social security benefits into account in calculating Ramento's damages for lost past income. Instead, M&M Tanks argues that the Circuit Court's admission of Dr. Loudat's redacted testimony violated its right to cross-examine and impeach Dr. Loudat. We disagree.

4

B.

In <u>Bynum v. Magno</u>, 106 Hawaiʻi 81, 101 P.3d 1149 (2004), the Hawaiʻi Supreme Court described the collateral source rule as follows:

> The "collateral source rule," in general, provides that benefits or payments received on behalf of a plaintiff, from an independent source, will not diminish recovery from the wrongdoer. <u>Ellsworth v. Schelbrock</u>, 235 Wis.2d 678, 611 N.W.2d 764, 767 (2000). "Under the collateral source rule, a 'tortfeasor is not entitled to have its liability reduced by benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor[.]'" <u>Sam Teague, Ltd. v. Hawaiʻi Civil Rights Comm'n</u>, 89 Hawaiʻi 269, 281, 971 P.2d 1104, 1116 (1999) (quoting <u>Sato v. Tawata</u>, 79 Hawaiʻi 14, 18, 897 P.2d 941, 945 (1995)).

<u>Bynum</u>, 106 Hawaiʻi at 86, 101 P.3d at 1154 (brackets in original; footnote omitted).

The supreme court in <u>Bynum</u> also cited Section 920A of the Restatement (Second) of Torts (1979) (hereinafter "Restatement"), entitled "Effect of Payments Made to Injured Party," and the comment to that section. The court noted that Section 920A(2) of the Restatement "establishes that, under the collateral source rule, '[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or part of the harm for which the tortfeasor is liable.'" <u>Bynum</u>, 106 Hawaiʻi at 86, 101 P.3d at 1154 (brackets in original; emphasis omitted) (quoting Restatement § 920A(2)). The court stated:

> Comment b to § 920A, entitled "Benefits from collateral sources," further explains that although double compensation may result to the plaintiff, such a benefit should redound to the injured party rather than "become a windfall" to the party causing the injury:
>
>> The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount *there may be a double compensation for a part of the plaintiff's injury.* But it is the position of the law that a *benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor.*
>
> Restatement § 920A cmt. b (emphases added). Ultimately, comment b explains that "it is the tortfeasor's responsibility to compensate for all harm that he causes,

5

> not confined to the net loss that the injured party receives." Id.
>
> > . . . The Restatement further declares that the rule "that collateral benefits are not subtracted from the plaintiff's recovery applies to the following *types* of benefits: . . . [g]ratuities[ ] . . . [and s]ocial legislation benefits." Restatement § 920A cmt. c(3)-(4) (emphasis added). As to social legislation benefits, the Restatement explains that "[i]f the benefit was . . . established . . . by law, [the plaintiff] should not be deprived of the advantage that it confers." Restatement § 920A cmt. b.

Id. (brackets and ellipsis points in original).

The supreme court applied Restatement § 920A(2) and the comment to Restatement § 920A in concluding that Medicare/Medicaid payments are social legislation benefits and that "the collateral source rule prohibits reducing a plaintiff's award of damages to reflect the discounted amount paid by Medicare/Medicaid." Id. at 88-89, 101 P.3d at 1156-57.[5] The court further concluded that the receipt of Medicare/Medicaid payments "should not be admitted in evidence to reduce damages 'since, by the collateral source rule, the receipt of collateral source benefits is deemed irrelevant and immaterial on the issue of damages.'" Id. at 94, 101 P.3d at 1162 (citation and brackets omitted). The court cited with approval the reasoning that "'the entire theory of the collateral source rule is to keep the jury from learning anything about the collateral income so that it

---

[5] In Bynum, the Hawai'i Supreme Court answered "no" to both the following questions certified to it by the United States District Court for the District of Hawai'i:

> "Where a plaintiff's healthcare expenses are paid by Medicare and/or Medical, does the discounted amount paid to a healthcare provider by [Medicare] and Medi-Cal [(a California Medicaid program)] constitute the amount that should be awarded as medical special damages to a plaintiff in a negligence action? In this circumstance, is evidence of amounts billed in excess of the amount[ ] paid irrelevant and inadmissible?"

Bynum, 106 Hawai'i at 82, 101 P.3d at 1150 (some brackets in original; footnote omitted). The supreme court held that "a plaintiff, injured by the tortious conduct of a defendant, is entitled to recover the reasonable value of medical services [provided to the plaintiff] and is not limited to the expenditures actually paid by Medicaid/Medicare." Id. at 92, 101 P.3d at 1160.

will not influence the decision of the jury' for the purpose of reducing the award of damages." Id. (brackets and citation omitted).

In Sam Teague, Ltd. v. Hawai'i Civil Rights Comm'n, 89 Hawai'i 269, 971 P.2d 1104 (1999), the Hawai'i Supreme Court applied the collateral source rule to an award of back pay in an employment discrimination case. The court held "as a matter of law," that unemployment benefits are collateral source payments that "should not be deducted from awards of back pay under our employment discrimination law." Sam Teague, 89 Hawai'i at 283, 971 P.2d at 1118. Accordingly, the supreme court held that "the circuit court did not have discretion, as a matter of law, to reduce the award of back pay by the amount of unemployment benefits received by [the illegally discharged employee]." Id.

C.

Comment c to Restatement § 920A, which the Hawai'i Supreme Court applied in Bynum, specifically identifies "[s]ocial security benefits" as a "[s]ocial legislation benefit[]" that is subject to the collateral source rule. Based on Bynum and Sam Teague, we conclude that the social security retirement benefits received by Ramento were subject to the collateral source rule and that such benefits could not properly be considered in calculating Ramento's damages for lost past income. Because Ramento's receipt of social security retirement benefits was not relevant to the calculation of Ramento's damages for lost past income, the Circuit Court properly redacted the portion of Dr. Loudat's first-trial testimony that considered the effect of Ramento's receipt of social security benefits on Dr. Loudat's calculation of such damages. See Bynum, 106 Hawai'i at 94, 101 P.3d at 1162 (concluding that "the receipt of collateral source benefits is deemed irrelevant and immaterial on the issue of damages" (citation omitted)).

As noted, M&M Tanks does not contend that the collateral source rule is inapplicable to Ramento's receipt of social security benefits or that Dr. Loudat should legally have

7

taken Ramento's social security benefits into account in calculating Ramento's damages for lost past income. Nevertheless, M&M Tanks argues that the Circuit Court's redaction of Dr. Loudat's testimony affected its ability to impeach Dr. Loudat by showing that he had acknowledged being wrong in computing Ramento's lost past income. In other words, M&M Tanks argues that the Circuit Court erred in preventing it from impeaching Dr. Loudat with his acknowledgment of error, even though Dr. Loudat's acknowledgment of error was incorrect as a matter of law. M&M Tanks further asserts that the Circuit Court's limiting its ability to impeach Dr. Loudat in this manner violated its right to cross-examine. We disagree.

The right to cross-examine in a civil case is not unlimited. See Kekua v. Kaiser Foundation Hospital, 61 Haw. 208, 221, 601 P.2d 364, 373 (1979) (stating that "the extent of cross-examination is a matter largely within the discretion of the trial court"); see also State v. Brooks, 125 Hawai'i 462, 470, 264 P.3d 40, 48 (App. 2011) ("[A] criminal defendant's 'right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" (citations omitted)). Under Hawai'i Rules of Evidence (HRE) Rule 403 (1993), the trial court has the discretion to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]" Failing to redact Dr. Loudat's testimony that he should have subtracted Ramento's social security benefits in computing Ramento's lost past income, when such benefits cannot legally be subtracted under the collateral source rule, would clearly have created the danger of unfair prejudice to Ramento as well as the significant risk of confusing and misleading the jury. Even assuming that the redacted portion of Dr. Loudat's testimony had some impeachment value, we conclude that under HRE Rule 403, the Circuit Court did not abuse its discretion in excluding the redacted portion of Dr. Loudat's testimony.

8

II.

M&M Tanks contends that the Circuit Court erred in denying its motion for judgment as a matter of law on Ramento's claim for punitive damages, made at the close of Ramento's case in chief, because M&M Tanks contends that there was no evidence presented of its financial condition. M&M Tanks frames the issue as whether there was sufficient evidence to support an award of punitive damages at the close of Ramento's case in chief. However, by presenting evidence after the Circuit Court denied its motion, M&M Tanks waived the right to challenge the sufficiency of the evidence at the close of Ramento's case in chief. See Azer v. Myers, 8 Haw. App. 86, 121 n.30, 793 P.2d 1189, 2011 n.30 (party waived any error in the trial court's denial of motions for directed verdict made at the close of adversary's case in chief by proceeding to present evidence), rev'd in part on other grounds by 71 Haw. 506, 795 P.2d 853 (1990); Surprenant v. Rivas, 424 F.3d 5, 12-13 (1st Cir. 2005); see also State v. Pudiquet, 82 Hawai'i 419, 423, 922 P.2d 1032, 1036 (App. 1996) (applying similar rule in criminal cases where a defendant presents evidence after a motion for judgment of acquittal at the close of the prosecution's case is denied). We therefore consider M&M Tanks' sufficiency of the evidence claim based on all the evidence presented to the jury. We disagree with M&M Tanks' contention that there was insufficient evidence of Ramento's financial condition to support the jury's award of punitive damages.

At the outset, we note that M&M Tanks does not argue that the evidence of its conduct did not justify an award of punitive damages. M&M Tanks also does not argue that the jury's award of punitive damages was excessive. Instead, M&M Tanks' sole claim is that the award of punitive damages was precluded by the lack of evidence of its financial condition.

In Romero v. Hariri, 80 Hawai'i 450, 457-58, 911 P.2d 85, 92-93 (App. 1996), the defendant challenged the jury's award of punitive damages as excessive based on his claim that

9

insufficient evidence of his financial condition had been presented. In rejecting this challenge, this court concluded:

> The failure to show net worth does not necessarily invalidate a punitive [damage] award but only eliminates a factor in which to gauge the reasonableness of the award. Fahrenberg v. Tengel, 96 Wis.2d 211, 291 N.W.2d 516, 527 (1980). See also Ahmed v. Collins, 23 Ariz. App. 54, 530 P.2d 900, 904 (1975) ("wealth of a defendant is only one factor which a jury may consider in assessing punitive damages"). Moreover, "[t]he plaintiff may generally show the reputed wealth of the defendant, and is not confined to proof of facts directly showing [the defendant's] financial condition." 22 Am. Jur. 2d Damages § 953 (1988). As explained long ago by a Wisconsin court, "In most cases[,] evidence of reputed wealth would be the only evidence the plaintiff could make upon the point, and . . . the defendant . . . always has it in his [or her] power to present the real facts to the jury in answer to the general proof of the plaintiff." Draper v. Baker, 61 Wis. 450, 21 N.W. 527, 529 (1884). See also Rogers v. Florence Printing Co., 233 S.C. 567, 106 S.E.2d 258, 262 (1958) (holding that punitive award not excessive and affirming principle that evidence of defendant's worth is information within his possession and defendant "should not be heard to complain that the jury made its award without such information, where he himself testified and did not offer it").

Id. at 458, 911 P.2d 93 (certain brackets in original).

In support of our conclusion, we noted that the only information plaintiff had about defendant's financial worth was based on his representations; "[d]efendant had the opportunity, and was better able, to present evidence which accurately portrayed his financial status"; and defendant had failed to introduce proof of financial worth beyond that of plaintiff's testimony. Id.

In Ditto v. McCurdy, 86 Hawaiʻi 93, 106, 947 P.2d 961, 974 (App.) rev'd in part on other grounds, 86 Hawaiʻi 84, 947 P.2d 952 (1997), we disagreed with the defendant's claim that plaintiff was required to produce evidence of defendant's financial condition to support the award of punitive damages. We stated that "it is in the defendant's best interest to put on evidence of financial condition when punitive damages are being considered because 'the defendant . . . always has it in his [or her] power to present the real facts to the jury in answer to the general proof of the plaintiff.'" Ditto, 86 Hawaiʻi at 106, 947 P.2d at 974 (citation omitted). We went on to conclude, in any

10

event, that evidence of defendant's financial condition had been presented to the jury, and we rejected defendant's "argument that the punitive damage award was not supported by evidence of financial condition," noting that defendant had "failed to introduce evidence of his financial worth beyond" what was presented at trial. Id. at 106-07, 947 P.2d at 974-75.

In this case, Ramento adduced evidence that M&M Tanks' contract for the Opana Project was in the area of $2.3 million; that Ramento had worked on many other projects while employed by M&M Tanks, including a large-scale project involving the installation of a two-mile water line along Kamehameha Highway and connecting 300 homes to the water line; and that M&M Tanks was a substantial company with a significant number of employees. M&M Tanks had the opportunity to present evidence of its financial condition in response to this evidence to controvert and oppose Ramento's claim for punitive damages, but M&M Tanks declined to present any evidence of its financial condition.

Under these circumstances, based on Romero and Ditto, we conclude that there was sufficient evidence to warrant the submission of Ramento's punitive damage claim to the jury. See Ditto, 86 Hawai'i at 106-07, 947 P.2d at 974-75; Romero, 80 Hawai'i at 457-58, 911 P.2d 92-93. We also conclude that M&M Tanks has not provided any basis for this court to hold that the jury abused its discretion in awarding Ramento $325,000 in punitive damages.

III.

M&M Tanks contends that there was insufficient evidence to support the jury's finding of liability on Ramento's retaliation claim. We disagree.

The evidence shows that on February 11, 2005, Ramento submitted a written complaint to M&M Tanks, asserting that it had discriminated against him on the basis of age. After Ramento submitted his complaint, he was briefly called back to work for about a week, but after that assignment ended, he was never

11

recalled to work for M&M Tanks again, even though there was work available on the Opana Project that he could perform.

We conclude that there was sufficient evidence for a rational jury to find that after Ramento complained about discrimination, M&M Tanks retaliated against him by refusing to call him back for further work. See Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 425-26, 32 P.3d 52, 69-70 (2001); Suzuki v. State, 119 Hawai'i 288, 302-03, 196 P.3d 290, 304-05 (App. 2008). Accordingly, we decline to disturb the jury's finding that M&M Tanks was liable on Ramento's retaliation claim.

### CONCLUSION

We affirm the Circuit Court's "Final Judgment" and its "Order Denying Defendant's Motion for Judgment or, in the Alternative, for a New Trial."

DATED: Honolulu, Hawai'i, November 26, 2014.

On the briefs:

Carl H. Osaki
for Defendant-Appellant

Ronald Albu
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge